## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

### BECKLEY DIVISION

| | | |
|---|---|---|
| DONALD MILTON BOYSAW, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 5:13-cv-24019 |
| | ) | |
| CHARLES E. SAMUELS, JR., *et al.*, | ) | |
| | ) | |
|     Defendants. | ) | |

### PROPOSED FINDINGS AND RECOMMENDATION

Pending before the Court are the following: (1) Defendants' Motion to Dismiss (Document No. 37.), filed on March 17, 2014; and (2) Plaintiff's Motion for Summary Judgment (Document No. 42.), filed on April 21, 2014. The Court notified Plaintiff pursuant to Roseboro v. Garrison, 528 F.2d 304 (4th Cir. 1975), that Plaintiff had the right to file a response to the United States' Motion and submit Affidavit(s) or statements and/or other legal or factual material supporting her claims as they are challenged by the United States in moving to dismiss. (Document No. 39.) On April 21, 2014, Plaintiff filed his Response in Opposition. (Document No. 42.) Having examined the record and considered the applicable law, the undersigned has concluded that Defendants' Motion should be granted and Plaintiff's Motion should be denied.

### PROCEDURAL BACKGROUND

On September 30, 2013, Plaintiff, acting *pro se*[1] and incarcerated at FPC Beckley, located in Beaver, West Virginia, filed his Complaint in this matter claiming entitlement to relief pursuant to Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 1346(b) and 2671, *et seq.*, and for alleged violations

---

[1] Because Plaintiff is acting *pro se*, the documents which he has filed in this case are held to a less stringent standard than if they were prepared by a lawyer, and therefore they are construed liberally. *See Haines v. Kerner*, 404 U.S. 519, 520-21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972).

of his constitutional and civil rights pursuant to <u>Bivens v. Six Unknown Federal Agents of Federal Bureau of Narcotics</u>, 403 U.S. 388, 91 S.Ct. 1999, 24 L.Ed.2d 619 (1971). (Document No. 2.) Plaintiff names the following as Defendants: (1) United States of America; (2) Charles E. Samuels, Jr.; (3) C. Eichenlaub; (4) J. Ziegler; (5) Dr. A. Card; and (6) Dr. K. McDaniel. (<u>Id.</u>, p. 2.) Plaintiff alleges that he is "a 66 year old chronic care inmate" and "on January 8, 2013, was sitting in the t.v. room located in Evergreen Housing Unit at FPC Beckley, when without provocation or warning, was savagely and brutally beaten by predatory inmate Paul Laughton." (<u>Id.</u>, p. 3.) Plaintiff explains that "[a]s the brutal attack ensued, the plaintiff was repeatedly kicked and stomped over his entire body, eventually breaking his ankle." (<u>Id.</u>) Plaintiff states that the "attack ended after [he] was rendered completely defenseless and bleeding on the t.v. room floor." (<u>Id.</u>) Plaintiff claims that the "attack lasted approximately 10 excruciating minutes." (<u>Id.</u>) Plaintiff complains that there are no safety cameras or panic buttons in the Evergreen Unit and "there are usually less than 2 correctional officers to monitor nearly 450 inmates." (<u>Id.</u>) Plaintiff asserts that the FPC Beckley does not meet the "standard, promulgated inmate-to-officer ratio that is designated to insure staff and inmate safety of 5 to 1." (<u>Id.</u>) Plaintiff contends that prison officials were aware that Inmate Laughton posed a danger to fellow inmates. (<u>Id.</u>) Plaintiff explains that Paul Laughton was "singled out by RDAP Staff, specifically Defendants Card and McDaniel, as exhibiting overtly aggressive, bullying behavior towards his fellow program participants and towards staff." (<u>Id.</u>) Plaintiff alleges that "[i]n order to protect RDAP Staff and RDAP inmates, inmate Laughton was expelled from RDAP and transferred to the Evergreen Housing Unit, the unit where  the plaintiff was attacked." (<u>Id.</u>) Plaintiff complains that "[t]here was no intervention of any help nor any change of security for this inmate's violent behavior other than a transfer to a non-RDAP unit." (<u>Id.</u>) Plaintiff further notes that "after inmate Laughton was expelled from RDAP, he was also being sanctioned by Case Manager Leslie in the

2

institution kitchen for the same threatening, aggressive, bullying behavior that had been observed and documented by RDAP staff." (Id., p. 4.) Based on the foregoing, Plaintiff alleges Defendants Samuels, Eichenlaub, Ziegler, Card, and McDaniel violated his rights under the Eighth Amendment. (Id., pp. 2 - 4.) Plaintiff further contends that the United States was negligent "in its duty to require employees of the Federal Bureau of Prisons to provide a safe, secure environment for the inmates at FPC Beckley." (Id.) As relief, Plaintiff requests monetary damages. (Id., pp. 4 - 5.)

By Order entered on November 21, 2013, the undersigned granted Plaintiff's Application to Proceed Without Prepayment of Fees and directed the Clerk to "issue process upon receipt of Plaintiff's initial partial payment of the filing fee." (Document No. 9.) Plaintiff paid his partial payment of the filing fee on December 16, 2013, and the Clerk issued process upon Defendants. (Document Nos. 12 and 13.)

On February 11, 2014, Defendants filed a "Motion for Enlargement of Time" requesting that the Court grant it an extension of time, "to and including March 19, 2014, in which Defendants must answer or otherwise respond to Plaintiff's Complaint." (Document No. 24.) In support of the Motion, Defendants stated "that representation authority has still not been obtained for the named Defendants." (Id.) On February 18, 2014, Plaintiff filed his "Opposition to Defendants' Motion for Enlargement of Time." (Document No. 25.) Plaintiff first argued that "defendants have been aware of the pending litigation against them for more than 12 months, given the filing of the original tort claim, on February 28, 2013[2]." (Id.) Plaintiff further contended that "defendants have had 60 days to procure representation and to prepare an answer to plaintiff's complaint." (Id.) By Order entered on February 20, 2014, the undersigned determined that Plaintiff's above objections were without

---

[2]  Plaintiff's Complaint was filed on September 30, 2013. (Document No. 2.)

merit and granted Defendants' Motion for Enlargement of Time. (Document No. 26.) Defendants were ordered to file their Answer or other responsive pleadings by March 19, 2014. (Id.)

On February 24, 2014, Plaintiff filed Motions for Entry of Default Judgment against Defendants. (Document Nos. 27 - 31.) By Proposed Findings and Recommendation entered on February 25, 2014, the undersigned recommended that the District Court deny Plaintiff's Motion for Entry of Judgment. (Document No. 32.) Plaintiff filed his Objections on March 13, 2014. (Document No. 36.)

On March 17, 2014, Defendants filed their Motion to Dismiss and Memorandum in Support. (Document Nos. 37 and 38.) Defendants argue that Plaintiff's Complaint should be dismissed based on the following: (1) "Plaintiff's constitutional claims must be dismissed for failure to exhaust administrative remedies" (Document No. 38, pp. 8 - 10.); and (2) "Plaintiff's FTCA claim must be dismissed as the actions of BOP officials clearly fall within the discretionary function exception of the FTCA" (Id., pp. 10 - 19.) As Exhibits, Defendants attach the following: (1) A copy of the Declaration of Sharon Wahl (Document No. 37-1, pp. 2 - 4.); (2) A copy of Plaintiff's Administrative Tort Claim Form dated February 20, 2013 (Id., pp. 6 - 8.); (3) A copy of a letter dated April 5, 2013, from the United States Department of Justice denying Plaintiff's tort claim (TRT-MXR-2013-03129) (Id., p. 10.); (4) A copy of Plaintiff's "Inmate History Quarters" dated February 5, 2014 (Id., p. 12.); (5) A copy of the United States Department of Justice's "Inmate Investigative Report" (Id., pp. 14 - 18.); (6) A copy of Plaintiff's pertinent medical records (Id., pp. 20 - 35.); and (7) A copy of Plaintiff's Administrative Remedy History dated February 7, 2014 (Id., pp. 37 - 38.).

Notice pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), was issued to Plaintiff on March 18, 2014, advising him of the right to file a response to Defendants' Motion to Dismiss. (Document No. 39.) By Memorandum Opinion and Order entered on April 4, 2014, United States

District Judge Irene C. Berger adopted the undersigned's recommendation, denied Plaintiff's Motions for Default Judgment, and referred the matter back to the undersigned from further proceedings. (Document No. 41.)

On April 21, 2014, Plaintiff filed his Response in Opposition to Defendants' Motion to Dismiss and Motion for Summary Judgment. (Document No. 42.) First, Plaintiff argues that he properly exhausted his administrative remedies. (Id., pp. 5- 6.) Next, Plaintiff contends that his "cause of action arose from an attack on Plaintiff [and] if there were an exception to shield the defendants, it would be found at 28 U.S.C. § 2680(h)." (Id., p. 6.) Plaintiff further contends that Defendants had a mandatory duty to protect him. (Id., pp. 11 - 12.) Plaintiff argues that Defendants are responsible because they "made a clinical judgment about the bullying, aggressive, threatening behavior and attitude of the assailant." (Id.) Plaintiff explains that "Defendants issued a directive to the attacker to seek additional treatment in the RDAP Program." (Id.) Plaintiff claims that "[t]he decision by the Defendants to move the assailant from Maple Unit to Evergreen Unit was not a mere exercise of benign 'discretion,' but rather a calculated, deliberate scheme to rid themselves of an inmate that they had clinically concluded was potentially dangerous to everyone." (Id.) Plaintiff contends that "the Defendants who run the RDAP program have proscribed duties as doctors of psychology and a 'correctional workers first' (per declaration of Sharon Wahl, dated February 7, 2014) to report and intervene in threatening inmate behavior." (Id.) Plaintiff contends that "Defendants had mandatory duties under Bureau of Prisons Program Statements regarding 'Work Place Violence; Employee Conduct; and Psychology Alert Functions (Statement No. P5324.07), to protect the staff and inmates." (Id.) Plaintiff argues that "Defendants were keenly aware that the assailant, without proper treatment, would continue to endanger other inmates and staff." (Id.) Plaintiff notes that the same day he was attacked, the assailant received an incident report for "displaying bullying and aggressive

behavior towards inmates in the institution's cafeteria and towards staff member Ms. Leslie." (Id.)
Finally, Plaintiff claims that records support the conclusion that Defendants acted with deliberate
indifference to his safety. (Id., pp. 7 - 12.) As an Exhibit, Plaintiff attaches a copy of the "Statement
of Charles E. Samuels, Jr. Director of the Federal Bureau of Prisons Before the U.S. Senate
Committee on the Judiciary for a Hearing on the Oversight of the Federal Bureau of Prisons October
22, 2013." (Document No. 42-1.)

## FACTUAL BACKGROUND

On the morning of January 8, 2013, Plaintiff notified prison staff that he had been assaulted
by another inmate. (Document No. 37-1, p. 15.) Plaintiff explains that he was watching television
when his attacker told him to clean the room. (Id.) Plaintiff claims that he left the room at 8:30 a.m.,
and returned at 9:00 a.m. (Id.) Upon returning to the room, Plaintiff states that he wanted to watch
the rest of the news and walked towards the television. (Id.) Plaintiff asserts that his attacker then "hit
him in the face, knocked him down and kicked his left leg." (Id.) Plaintiff was evaluated by medical
staff, who determined that he suffered a contusion with abrasion to the left facial area and mild
swelling of the left ankle. (Id., pp. 32 - 34.) Subsequent x-rays revealed a fracture to Plaintiff's left
ankle. (Id., pp. 23 - 29.) An internal investigation revealed that the assault occurred over a verbal
disagreement about the television on the morning of January 8, 2013, as well as some previous
differences between the two inmates. (Id., p. 18.) The previous differences were first revealed during
the internal investigation. (Id., p. 3.) Ms. Wahl declares that an investigation concerning Plaintiff's
tort claim revealed the following about Plaintiff's attacker (Id., pp. 3 - 4.):

> (1) he had been incarcerated at SCP Beckley for 24 months prior to the incident with
> Plaintiff and had no previous incidents of violence; (2) he participated in the RDAP
> program from December 13, 2011 until May 2012, when he was cited for displaying
> bullying, intimidation, and aggressive gestures toward his treatment peers; (3) he was
> advised by RDAP staff that he would need to repeat Phase 1 of the program to allow

additional treatment time for him to work on resolving his power orientation problems; (4) rather than accept the treatment recommendation, he chose to voluntary withdraw from RDAP on May 8, 2012; (5) he was moved from Maple Unit (RDAP Unit) to general population in Evergreen Unit on May 8, 2012; and (6) he resided in Evergreen Unit without any incident of violence until the incident on January 8, 2013.

## THE STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)(quoting Bell Atlantic Corporation v. Twombly, 550 U.S. 554, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. Although factual allegations must be accepted as true for purposes of a motion to dismiss, this principle does not apply to legal conclusions. Id. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. The "[f]actual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." Twombly, 550 U.S. at 555, 127 S.Ct. at 1959. Where a *pro se* Complaint can be remedied by an amendment, however, the District Court may not dismiss the Complaint with prejudice, but must permit the amendment. Denton v. Hernandez, 504 U.S. 25, 34, 112 S.Ct. 1728, 1734, 118 L.Ed.2d 340 (1992).

Federal Courts are Courts of limited jurisdiction that are empowered to consider cases authorized by Article III of the United States Constitution and statutes enacted by Congress. Bender v. Williamsport Area School District, 475 U.S. 534, 541, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986). A motion to dismiss filed pursuant to Rule 12(b)(1) raises the question of the federal court's subject matter jurisdiction. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). Once subject matter jurisdiction is challenged, plaintiff bears the "burden of proving that subject matter jurisdiction

exists." Evans v. B.F. Perkins Co., 166 F.3d 642, 647 (4th Cir. 1999). Subject matter jurisdiction cannot be waived by the Court or the parties. The absence of subject-matter jurisdiction may be raised at any time. Lovern v. Edwards, 190 F.3d 648 (4th Cir. 1999). When considering a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), a District Court may refer to evidence outside the pleadings without converting the proceeding to one for summary judgment. See William v. United States, 50 F.3d 299 (4th Cir. 1995).

## DISCUSSION

### 1.    Bivens Claim:

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a)(1996), requires that inmates exhaust available administrative remedies prior to filing civil actions though the administrative process may not afford them the relief they might obtain through civil proceedings.[3] Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382-83, 165 L.Ed.2d 368 (2006); Porter v. Nussle, 534 U.S. 516, 122 S.Ct. 983, 152 L.Ed.2d 12 (2002)(The Prison Litigation Reform Act's exhaustion requirement applies to all inmate suits about prison life whether they involve general circumstances or particular episodes and whether they allege excessive force or some other wrong.); Booth v. Churner, 532 U.S. 731, 121 S.Ct. 1819, 1820,149 L.Ed.2d 958 (2001)("Under 42 U.S.C. § 1997e(a), an inmate seeking only money damages must complete any prison administrative process capable of addressing the inmate's complaint and providing some form of relief, even if the process does not make specific provision for monetary relief."). "[T]here is no futility exception to the PLRA's exhaustion requirement."

---

[3] Title 42 U.S.C. § 1997e(a) provides as follows:

No action shall be brought with respect to prison conditions under section 1983 of this title or any other federal law, by a prisoner confined in any jail, prison, or other correction facility until such administrative remedies as are available are exhausted.

Massey v. Helman, 196 F.3d 727, 733 (7th Cir. 1999). But the plain language of the statute requires that only "available" administrative remedies be exhausted. A grievance procedure is not "available" if prison officials prevent an inmate from using it. Dale v. Lappin, 376 F.3d 652, 656 (7th Cir. 2004); Mitchell v. Horn, 318 F.3d 523, 529 (3d Cir. 2003)(inmate lacked available administrative remedies for exhaustion purposes where inmate was unable to file a grievance because prison officials refused to provide him with the necessary grievance forms); Miller v. Norris, 247 F.3d 736, 740 (8th Cir. 2001)(allegations that prison officials failed to respond to his written requests for grievance forms were sufficient to raise an inference that inmate had exhausted his available administrative remedies.)

If an inmate exhausts administrative remedies with respect to some, but not all, of the claims she raises in a Section 1983, Bivens or FTCA action, the Court must dismiss the unexhausted claims and proceed with the exhausted ones. See Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 913, 166 L.Ed.2d 798 (2007)("The PLRA does not require dismissal of the entire complaint when a prisoner has failed to exhaust some, but not all, of the claims included in the complaint. * * * If a complaint contains both good and bad claims, the court proceeds with the good and leaves the bad.") It appears to be the majority view as well that exhausting administrative remedies after a Complaint is filed will not save a case from dismissal. See Neal v. Goord, 267 F.3d 116, 121-22 (2d Cir. 2001)(*overruled on other grounds*), a Section 1983 action, citing numerous cases. The rationale is pragmatic. As the Court stated in Neal, allowing prisoner suits to proceed, so long as the inmate eventually fulfills the exhaustion requirement, undermines Congress' directive to pursue administrative remedies prior to filing a complaint in federal court. Moreover, if during the pendency of a suit, the administrative process were to produce results benefitting plaintiff, the federal court would have wasted its resources adjudicating claims that could have been resolved within the prison grievance system at the outset. Neal, 267 F.3d at 123. In Freeman v. Francis, 196 F.3d 641, 645 (6th Cir. 1999), the Court stated:

"The plain language of the statute [§ 1997e(a)] makes exhaustion a precondition to filing an action in federal Court.. . .The prisoner, therefore, may not exhaust administrative remedies during the pendency of the federal suit." Thus, the PLRA requires that available administrative remedies must be exhausted before the filing of a suit in Federal Court. It is further clear that the PLRA does not require that an inmate allege or demonstrate that she has exhausted her administrative remedies. See Jones v. Bock, supra; Anderson v. XYZ Correctional Health Services, 407 F.3d 674, 677 (4th Cir. 2005). Failure to exhaust administrative remedies is an affirmative defense. Prison officials have the burden of proving that the inmate had available remedies which she did not exhaust. See Dale v. Lappin, 376 F.3d 652, 655 (7th Cir. 2004)("Although exhaustion of administrative remedies is a precondition to a federal prisoner filing a Bivens suit, [citations omitted] failure to exhaust is an affirmative defense that the defendants have the burden of pleading and proving." (Citations omitted))

For Bivens purposes, proper exhaustion of available administrative remedies requires that "a prisoner must submit inmate complaints and appeals in the place, and at the time, the prison's administrative rules require." Dale v. Lappin, 376 F.3d at 655 (internal citations omitted); also see Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2382, 165 L.Ed.2d 368 (2006)(stating that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings"). The Federal Bureau of Prisons [BOP] has established an Administrative Remedy Program, 28 C.F.R. § 542.10, et seq., through which an inmate may seek formal review of issues or complaints relating to confinement. Depending upon at what level an inmate initiates it, the BOP's Administrative Remedy Program is a three-step or four-step grievance procedure. As a general matter, a federal inmate is required first to attempt to resolve his complaints informally by the submission of an "Inmate Request to Staff Member" form. 28 C.F.R. § 542.13. The

inmate's request may be rejected if improper, and the inmate will then be advised of the proper administrative procedure. Id. Within 20 days after the circumstances occurred which are the subject of the inmate's complaints, the inmate must complete this first step and submit a formal "Administrative Remedy Request" on a BP-9 form to an institution staff member designated to receive such Requests, 28 C.F.R. § 542.14(a) and (c)(4), or under exceptional circumstances to the appropriate Regional Director. Id., § 542.14(d). The Warden of the institution and the Regional Director must respond to the inmate's Request within 20 and 30 days respectively. Id., § 542.18. If the inmate's Request was directed to the Warden of the institution and the Warden's response is unfavorable, the inmate may appeal within 20 days to the Regional Director on a BP-10. Id., § 542.15(a) and (b). If the Regional Director's response is unfavorable, the inmate may appeal to General Counsel on a BP-11 form within 30 days after the Regional Director signed the response. Id., § 542.15(a). General Counsel has 40 days to respond to the inmate's appeal. Id., § 542.18. The administrative process is exhausted when General Counsel issues a ruling on the inmate's final appeal. Id., § 542.15(a). The entire process takes about 120 days to complete. An inmate's submission may be rejected at any level for failure to comply with the administrative remedy requirements or if the submission is written in an obscene or abusive manner. Id., § 542.17(a). The inmate will be provided with notice of any defect and whether the defect is correctable. Id., § 542.17(b). If a request or appeal is rejected and the inmate is not given an opportunity to correct the defect and resubmit, the inmate may appeal the rejection to the next appeal level. Id., § 542.17(c).

In their Motion to Dismiss, Defendants argue that Plaintiff failed to exhaust his administrative remedies. (Document No. 38, pp. 8 - 10.) Specifically, Defendants contend that "Plaintiff did not file any administrative remedies with regard to the claims made in the instant case prior to filing his lawsuit." (Id., p. 9.) In support, Defendants submit the Declaration of Ms. Sharon Wahl, a Paralegal

for the Consolidated Legal Center at FCI Beckley. (Document No. 38-2, pp. 2 - 4.) Ms. Wahl declares

that in her position she has access to SENTRY, the Bureau of Prisons' online system containing,

among other things, information about inmates' administrative remedy filings. (Id., p. 1.) Ms. Wahl

explains that she also has access to information regarding inmates in the BOP's custody. (Id.)

Specifically, Ms. Wahl states as follows in her Declaration (Id., p. 4.):

> 23.    Plaintiff did not file any administrative remedies with regard to the claims
> made in the instant case prior to filing his lawsuit.

> 24.    Plaintiff has only filed one remedy request during his incarceration, which
> was in 2006 and complained about the nutritional value of the food served at
> FCI Beckley.

In response, Plaintiff contends that he properly exhausted his administrative remedies.

(Document No. 42, pp. 5 - 6.) Plaintiff explains that he filed an administrative tort claim with the

BOP on February 28, 2013. (Id., p. 5.) Plaintiff states that his administrative claim was denied by

letter dated April 5, 2013. (Id.) Plaintiff explains that "[t]he claims listed by the Plaintiff as actionable

under the Federal Tort Claims Act are also actionable under 28 U.S.C. § 1331." (Id.) Plaintiff asserts

that any further exhaustion would have been "multiplicitous, redundant, and re-exhaustion of the

same claims within a singular action." (Id., p. 6.)

Based upon a review of the record, the undersigned finds that Plaintiff failed to properly

exhaust his administrative remedies pursuant to the PLRA. Although Plaintiff contends that he

properly filed an administrative tort claim with the prison, the exhaustion requirements concerning

FTCA and Bivens actions differ.[4] See Davis v. United States, 2007 WL 3473275 (N.D.W.Va. Nov.

---

[4] Before an inmate can bring a claim under the FTCA, the inmate must exhaust procedures
specified at 28 C.F.R. §§ 14.1 to 14.115 and 543.30 to 543.32. The administrative process which
inmates must exhaust when they have complaints under the FTCA is spelled out at 28 C.F.R. §§ 14.1
- 14.11. To exhaust administrative remedies as required before filing an action under the FTCA, the
inmate must first submit an administrative claim including a claim for money damages in a sum

13, 2007); Murphy v. Inmate Systems Management, 2008 WL 793631 (S.D.W.Va. Mar. 20, 2008).

Having examined the record, the Court finds that the administrative remedies filed by Plaintiff relate

to the exhaustion of his FTCA claim, not his Bivens claim. Plaintiff fails to produce any documents

indicating that he exhausted his Bivens claim. To the extent Plaintiff is arguing that he should be

excused from exhaustion due to the futility of filing a administrative remedy asserting the same claim

denied in his administrative tort claim, his argument is without merit. The United States Supreme

Court has stated that it "will not read futility or other exceptions into statutory exhaustion

requirements. . . ."[5] Booth v. Churner, 532 U.S. 741, n. 6, 121 S.Ct. 1819, 1825, 149 L.Ed.2d 958

(2001); also see Massey, 196 F.3d at 727("[T]here is no futility exception to the PLRA's exhaustion

requirement."); Goodwin v. Beasley, 2011 WL 835937, * 3 (M.D.N.C. March 3, 2011)("Courts have

squarely rejected prisoners' attempts to bypass the exhaustion requirements by merely arguing lack

of knowledge about the grievance process."); Smith v. Boyd, 2008 WL 2763841, * 1 (D.S.C. July

11, 2008)("This court cannot waive the exhaustion requirement, which was specifically mandated

---

certain for the alleged injury sustained on a Standard Form 95 to the Federal agency whose activities gave rise to the claim. *Id.*, § 14.2(a) and (b)(1). After investigation and examination and informal attempts at resolving the inmate's claim as the circumstances may require, *Id.*, §§ 14.6 and 14.8, the agency may deny or approve the inmate's claim. If the agency denies the inmate's claim, he may file suit in the District Court within six months of the mailing of the denial. *Id.*, § 14.9(a). The Director of the Federal Bureau of Prisons is authorized to settle meritorious administrative Federal tort claims by providing monetary compensation. 28 C.F.R. §§ 0.96(k) and 0.172.

    [5] Unlike the exhaustion requirement for Section 1983 and *Bivens* actions, the exhaustion requirement for Section 2241 Petitions are judicially imposed. *See Moscato v. Federal Bureau of Prisons*, 98 F.3d 757 (3rd Cir. 1996); *McCallister v. Haynes*, 2004 WL 3189469 (N.D.W.Va. 2004). Since the exhaustion requirement for a Section 2241 Petition is judicially imposed, the Court has discretion to waive that requirement in certain circumstances. *See LaRue v. Adams*, 2006 WL 1674487, * 8 (S.D.W.Va. June 12, 2006)(*citing Smith v. Angelone*, 111 F.3d 1126, 1129-31 (4th Cir.), *cert. denied*, 521 U.S. 1131, 118 S.Ct. 2, 138 L.Ed.2d 1036 (1997)). Courts, therefore, have recognized that exhaustion may be excused under certain circumstances, such as by a showing of futility or irreparable injury.

by Congress, based on Plaintiff's ignorance of the requirement or any perceived futility or inadequacy with the administrative grievance process."); Jacocks v. Hedrick, 2006 WL 2850639, * 5 (W.D.Va. Sept. 29, 2006)(finding that inmate's alleged pain and suffering after the loss of his eye were not special circumstances that would excuse his failure to exhaust where he had filed prior grievances complaining of other matters). Based on the foregoing, the undersigned recommends that Plaintiff's Bivens claim be dismissed in view of his failure to exhaust the administrative remedies provided under the BOP's Administrative Remedy Program, 28 C.F.R. § 542.10, *et seq.*, prior to filing his Complaint.

### 2.    **FTCA Claim:**

Plaintiff asserts a negligence claim under the FTCA against Defendants. Such claims are appropriately raised against the United States under the Federal Tort Claims Act [FTCA], 28 U.S.C. §§ 2671-2680. An inmate "can sue under the FTCA to recover damages from the United States Government for personal injuries sustained during confinement in a federal prison, by reason of the negligence of a government employee." United States v. Muniz, 374 U.S. 150, 83 S.Ct. 1850, 10 L.Ed.2d 805 (1963). The FTCA provides at Section 2674 as follows:

> The United States shall be liable, respecting the provisions of this title relating to tort claims, in the same manner and to the same extent as a private individual under like circumstances, but shall not be liable for interest prior to judgment or for punitive damages.

The FTCA does not create a new cause of action. Medina v. United States, 259 F.3d 220, 223 (4th Cir. 2001). The statute merely waives sovereign immunity and "permits the United States to be held liable in tort in the same respect as a private person would be liable under the law of the place where the act occurred." Id. Section 2680, however, exempts from the waiver certain categories of claims. See 28 U.S.C. §§ 2680(a)-(n). Section 2680(a) contains the discretionary function exception. The

14

discretionary function exception excludes from the FTCA's waiver of sovereign immunity:

> [a]ny claim based upon an action or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation, whether or not such statute or regulation be valid, or based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty on the part of the federal agency or an employee of the Government, whether or not the discretion involved be abuse.

28 U.S.C. § 2680(a). Plaintiff bears the burden of demonstrating that the discretionary function exception does not apply. Welch v. United States, 409 F.3d 646, 650-51 (4th Cir. 2005); LeRose v. United States, 2006 WL 5925722 * 8 (S.D.W.Va. May 17, 2006)(J. Copenhaver). Whether the discretionary function exception bars suit against the United States depends upon two factors. See United States v. Gaubert, 499 U.S. 315, 111 S.Ct. 1267, 113 L.Ed.2d 335 (1991); Berkovitz v. United States, 486 U.S. 531, 108 S.Ct. 1954, 100 L.Ed.2d 531 (1988). First, the conduct at issue must involve "an element of judgment or choice." Berkovitz, 486 U.S. at 536, 108 S.Ct. 1959; also see Williams v. United States, 50 F.3d 299, 309 (4th Cir. 1995). Where there is a mandatory statute, regulation, or policy, there is no discretion, and therefore no exception "because 'the employee has no rightful option but to adhere to the directive.'" Gaubert, 499 U.S. at 322, 111 S.Ct. at 1273(quoting Berkovitz, 486 U.S. at 536, 108 S.Ct. 1954.) Second, if conduct involved an "element of judgment or choice," the Court must determine whether that judgment is of the kind that the discretionary function exception was designed to shield." Gaubert, 499 U.S. at 322 - 23. "Because the purpose of the exception is to prevent judicial second-guessing of the legislative and administrative decisions grounded in social, economic, and political policy through the medium of an action in tort, when properly construed, the exception protects only governmental actions and decisions based on consideration of public policy." Id. at 323. The focus is on the "nature of the conduct" and not the "status of the actor." See Gaubert, 499 U.S. at 325. Thus, the Court should "look

15

to the nature of the challenged decision in an objective, or general sense, and ask whether that decision is one which we would expect inherently to be grounded in considerations of policy." Suter v. United States, 441 F.3d 306, 310 - 11 (4th Cir. 2006). "When a statute, regulation, or agency guideline permits a government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion." Id.

First, the Court must consider whether the challenged conduct was discretionary or involved an element of judgment or choice. In the instant case, Plaintiff contends that prison officials improperly placed his attacker in general population, assigned inadequate prison guards, and failed to install appropriate security devices such as emergency alarms or cameras. Plaintiff, however, fails to identify any mandatory directive concerning inmate classification, inmate placement, staff allocation, or the installation of security devices. Title 18 U.S.C. § 4042 provides that the BOP shall "provide suitable quarters and provide for the safekeeping, care, and subsistence of all persons charged with or convicted of offenses against the United States." 18 U.S.C. § 4042(a)(2). Although the foregoing statute imposes upon the BOP a general duty to care for inmates, the statute does not set forth any specific means of carrying out that duty. Thus, the BOP retains discretion as to how it will fulfill that duty. See Cohen v. United States, 151 F.3d 1338, 1342 (11th Cir. 1998)(Section 4042 gives discretion to the BOP as to the means to comply with the statute.); Goforth v. United States, 2013 WL 5658347, * 3 (S.D.W.Va. Oct. 15, 2013)("Cases from this circuit and other circuits have unanimously held that BOP officials retain wide discretion as to the means by which this general duty is fulfilled.") Decisions concerning inmate classification, inmate placement, allocation of staff, and the installation of security devices such as emergency alarms or cameras involve an element of judgment or choice. See Donaldson v. United States, 281 Fed.Appx. 75 (3rd Cir. 2008)(find that "[n]o federal statute, regulation, or policy required the BOP to take a particular course of action to ensure

16

[plaintiff's] safety from attacks by other inmates," including his fellow inmate who had made prior threats of violence); Santana-Rosa v. United States, 335 F.3d 39, 44 (1st Cir. 2003)(explaining that "decisions with regard to classification of prisoners, assignment to particular institutions or units, and allocation of guards and other correctional staff must be viewed as falling within the discretionary function exception to the FTCA, if penal institutions are to have flexibility to operate"); Cohen, 151 F.3d at 1344(prison's decision to place the inmate attacker at a minimum security prison was a discretionary function); Little v. United States, 2014 WL 4102377, * 6 (N.D.W.Va. Aug. 18, 2014)(finding that the discretionary function exemption applies to decisions as to inmate classification and placement in general population); Rich v. United States, 2014 WL 2778652, * 4 (N.D.W.Va. June 19, 2014)(finding that prison officials' conduct of searching inmates in SHU prior to allowing entry into the recreation cage involved an element of judgment or choice); Goforth, 2013 WL 5658347 at * 3 ("BOP housing assignments are discretionary and are not subject to a mandatory directive"); Davis v. United States, 2010 WL 2754321 (W.D.Va. July 12, 2010)(discretionary function exception applied to inmate's claim that surveillance cameras and officers were not properly positioned to maintain security); Strachan v. United States, 2009 WL 1586812 (E.D.Ky. June 5, 2009)(finding discretionary function exception applied to plaintiff's claim that he was assaulted by another inmate because there were no officers or manned security cameras in the living unit); and Brown v. United States, 569 F.Supp.2d 596, 600 (W.D.Va. 2008)(discretionary function exception applied to "a prison official's decision regarding whether to place an inmate in the general population").

Citing Program Statement 5324.07, Plaintiff claims that prison staff had "mandatory duties . . . to protect the staff and inmates." (Document No. 42, p. 11.) Plaintiff argues that prison staff are responsible because they "made a clinical judgment about the bullying, aggressive, threatening

behavior and attitude of the assailant." (Id.) BOP Program Statement [P.S.] 5324.07 provides, in

pertinent part, as follows:

> 5.    DEFINITION OF TERMS
>    a.    Case management Activity (CMA) PSY ALERT Assignment. The CMS of Psychology Alert should be added when an inmate has substantial mental health concerns that require extra care, and/or the inmate has special psychological needs that pose management or security concerns (e.g., when an inmate's housing is changed or when a transfer occurs).
>
> * * *
>
> 6.    PSYCHOLOGY STAFF RESPONSIBILITIES. Only a psychologist may enter or remove the CMA assignment of PSY ALERT. The Chief Psychologist is responsible for tracking the SENTRY CMA of PSY ALERT. The Chief Psychologist monitors inmates with PSY ALERT assignments, and conveys management and mental health concerns (including when a PSY ALERT assignment is added or removed from SENTRY) as soon as practicable to appropriate unit team members and Health Services staff members. This includes applicable information found in the Psychology Data System (PDS).

P.S. 5324.07. P.S. 5324.07 clearly contains discretionary language. The purpose of the "PSY Alert"

assignment is to ensure that staff are aware of an inmate's special psychological needs, and that the

inmate's movement requires special precautions. The undersigned notes that Plaintiff does not allege

that his attacker had a "substantial mental health concern," which required an assignment of "PSY

Alert." Furthermore, Attachment B of P.S. 5324.07 explains as follows:

> This policy provides guidelines (only) for psychologist on when to apply PSY ALERT. It was intentional that the PSY ALERT assignment was not defined by AXIS level disorders contained in the Diagnostic Statistical Manual. It is expected that sound clinical judgment will be used for this assignment." Thus, the decision concerning the assignment of "PSY Alert" involves "an element of judgment and choice."

Based on the foregoing, the undersigned finds that the first prong of the discretionary function test

is satisfied because prison staff are allowed discretion regarding the classification and placement of

inmates, allocation of staff, and the installation of emergency alarms or cameras.

18

Next, the undersigned will consider whether the judgment is of the kind that the discretionary function exception was designed to shield. As stated above, "[w]hen established governmental policy, as expressed or implied by statute, regulation, or agency guidelines, allows a Government agent to exercise discretion, it must be presumed that the agent's acts are grounded in policy when exercising that discretion. Gaubert, 499 U.S. at 324. The BOP "must balance a variety of factors and employ considerable discretion in determining how to go about protecting prisoners from harm, while also managing costs and ensuring the safety of the prison staff and the community." Caudle v. United States, 72 F.3d 132 (7th Cir. 1995). Thus, "[m]atters such as the allocation of guards and other correctional staff are plainly grounded in policy." Goforth, 2013 WL 5658347, at * 4. Additionally, decisions concerning the placement of inmates and the installation of security devices are grounded in public policy. See Cohen, 151 F.3d at 1344(finding that the BOP's "actions in classifying prisoners and placing them in institutions involve conduct and decisions that meet both prerequisites for application of the discretionary function exception"); Usry v. United States, 2013 WL 1196650, * 7 (N.D.W.Va. March 25, 2013), aff'd, 545 Fed.Appx. 265 (4th Cir. 2013)(finding that decisions regarding the placement of inmates "are unquestionably grounded in social, economic, safety and security concerns"); Jacocks v. Hedrick, 2006 WL 2850639, * 10 (W.D.Va. Sep. 29, 2006)("The supervisory defendants' decisions regarding . . . staffing of the housing unit also fall within the discretionary function exception); Michell v. United States, 149 F.Supp.2d 1111, 1114 (D.Ariz. 1999), aff'd, 20 Fed.Appx. 636 (9th Cir. 2001)("Decisions by governmental officials as to the day-to-day security needs of a prison, including the number of guards to employ to supervise a given area, where to place emergency alarms, and tactical choices made surrounding the movement of inmates within the institutions are judgment calls and choices based on policy determinations that seek to accommodate 'safety [goals] and the reality of finite agency resources.'") The Court notes that

19

decisions regarding staffing and installation of security devices clearly have economic ramifications. Based on the foregoing, the undersigned finds that the discretionary function exception applies because both prongs of the discretionary function test are satisfied. Accordingly, Plaintiff's above claim should be dismissed for lack of subject matter jurisdiction.

## **PROPOSAL AND RECOMMENDATION**

Based upon the foregoing, it is therefore respectfully **PROPOSED** that the District Court confirm and accept the foregoing factual findings and legal conclusions and **RECOMMENDED** that the District Court **GRANT** Defendants' Motion to Dismiss (Document No. 37.), **DENY** Plaintiff's Motion for Summary Judgment (Document No. 42.), **DISMISS** Plaintiff's Complaint (Document Nos. 2 and 4.) and remove this matter from the Court's docket.

The Plaintiff is hereby notified that this "Proposed Findings and Recommendation" is hereby **FILED**, and a copy will be submitted to the Honorable United States District Judge Irene C. Berger. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rule 6(e) and 72(b), Federal Rules of Civil Procedure, the Plaintiff shall have seventeen (17) days (fourteen days, filing of objections and three days, mailing/service) from the date of filing of this Findings and Recommendation within which to file with the Clerk of this Court specific written objections identifying the portions of the Findings and Recommendation to which objection is made and the basis of such objection. Extension of this time period may be granted for good cause.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.

1984). Copies of such objections shall be served on opposing parties, Judge Berger and this Magistrate Judge.

The Clerk is requested to send a copy of this Proposed Findings and Recommendation to Petitioner, who is acting *pro se*, and transmit a copy to counsel of record.

Date: October 9, 2014.

R. Clarke VanDervort
United States Magistrate Judge